IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JOYCE K. GANN   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | CASE NO. 6:07-CV-1564-KOB |
| ) | |
| MICHAEL J. ASTRUE,   ) | |
| Commissioner of the Social   ) | |
| Security,   ) | |
| ) | |
| Defendant.   ) | |

## MEMORANDUM OPINION

### I. Introduction

On June 23, 2004, Claimant, Joyce K. Gann, filed an application for Title II Disability Insurance Benefits alleging disability commencing on February 1, 1997.  The Commissioner denied the claim.  The Claimant timely filed a request for a hearing before an Administrative Law Judge ("ALJ").  The ALJ held a hearing on March 1, 2006.  (R. 13).

In a decision dated April 13, 2006, the ALJ found that the Claimant is not disabled within the meaning of the Social Security Act, and was not eligible for Disability Insurance Benefits. (R. 20).  On June 29, 2007, the Appeals Council denied Claimant's request for review.  (R. 3). The Claimant has exhausted her administrative remedies, and this court has jurisdiction under 42 U.S.C. § 405(g) and 1631(c)(3).  For the reasons stated below, the court AFFIRMS the Commissioner's decision.

## II.  Issue Presented

Whether the ALJ satisfied his duty to develop a full and fair record.

## III. Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standard and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).  However, "no...presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence.  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> To make this determination, the Commissioner employs a five-step, sequential process:
>
> (1) Is the person presently employed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). When a claimant is not represented by counsel and does not waive her statutory right to representation, the ALJ's basic obligation rises to the level of a "special duty . . . 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and to be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). When a claimant is represented by counsel, the duty to develop the record is normally discharged if the ALJ fully develops the medical evidence for the 12 month period prior to the application for benefits. *See* 20 C.F.R. § 416.912(d) (stating that "[b]efore we make a determination that you are

not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"). Because a claimant bears the burden of proving that she is disabled, she is responsible for producing evidence in support of her disability claim. *See* 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912 (c).

## V. Facts

The Claimant was fifty-three years old when her insured status for entitlement to disability income benefits expired on December 31, 2002, and was fifty-six years old at the time of the hearing in this matter. (R. 14). She has a high school education. (R. 14). She alleged disability because of "depression, back, shoulders, and leg." (R. 14). Asserting that she was last able to work on February 1, 1997, the Claimant listed past employment as an order clerk/receptionist, material handler, and accounts clerk. (R. 20).

The record includes a document reflecting a worker's compensation payment to the Claimant with a date of loss of 1/23/97 for the period 6/6/97-6/17/97. Attached to that document is the Claimant's explanatory note:

> I have been asked to send you records and a statement of my employment for the year 1997. Approx 1 23 97 was my last day of work. Dr. James Flanagan took me off work for tennis elbow treatment and six weeks later I had surgery on my right elbow. I received CNA workmans comp until approx 6 24 97. My mother had terminal cancer, so I had taken my family leave to take care of her at my home with Hospice Assistance. My mother passed away 8 9 97. I have not been able to work since then.

(R. 50).

The medical documents in the record reflect that in February 2002, Dr. David Kimbrell, the Claimant's treating internist, diagnosed her with hypertension and insomnia. (R. 16, 134). By late July, her hypertension as well as her chronic anxiety and depression had all improved

with medication. (R. 16, 132-33). Between September 2002 and June 2004, internists at Brookwood saw the Claimant on several occasions. (R. 126-30). On January 10, 2003, Dr. Kimbrell's treatment notes reveal that the Claimant's hypertension was doing well, and that her depression was under control, and the doctor suggested exercise and weight loss as a treatment for her fatigue. (R. 16, 130). On January 10, 2003, Dr. Kimbrell On February 9, 2004, the Claimant advised Dr. Kimbrell that she "has been very busy the past year caring for her ill husband . . . . ." (R. 127). In June of 2004, the doctor recorded that the Claimant felt "a little blah" but indicated that "Celexa [a prescription antidepressant drug] helps." (R. 126).

Hospital records from 2002 indicate that Dr. James Flanagan, the Claimant's treating orthopaedic surgeon, performed arthroscopic surgery on claimant's left shoulder and that she underwent physical therapy to rehabilitate that shoulder. (R. 157-71).

On August 22, 2003, Claimant underwent a lumbar myelogram and the results showed a small extradural defect at L4-5 on the left. (R. 16, 176). CT lumbar post myelography revealed broad-based bulges at L3-4, L4-5 and L5-S1. (R. 16, 176). The L5-S1 level showed a marked degenerative change. (R. 176).

In July 2004, Dr. Flanagan performed arthroscopic surgery on Claimant's left knee to repair a medial ligament sprain. (R. 16, 110). In February 2005, Dr. Flanagan performed arthroscopic surgery on Claimant's right knee. (R. 232). A few months later, in June 2005, Claimant underwent a total right knee joint replacement because of an osteoarthritic knee joint. (R. 194-201). In October of 2005, Dr. Flanagan manipulated her right knee under anesthesia to gain full extension and full flexion of the right knee (R. 183).

The record indicates that the Disability Determination Service attempted to obtain

disability documentation regarding Claimant from the University of Alabama at Birmingham ("UAB") Hospital, but that the hospital advised the Service in July of 2004 that it was unable to locate her records. (R. 98-100).

On July 29, 2004, Dr. W.B. Stonecypher, an agency medical doctor who reviewed Claimant's records, noted that the file did not contain all of the medical evidence requested (referring to UAB hospital's report that it was unable to locate Claimant's records), and reminded Claimant that she had not furnished the additional requested documents. He concluded that "[s]ince the evidence in file is insufficient to determine the severity of your condition(s), your claim is denied." (R. 23).

Subsequent to this denial, the Claimant requested a hearing before an ALJ, and received a hearing.

## March 2006 Hearing

At the hearing in March 2006, Claimant was represented by an attorney. She testified that she had undergone a total of twelve surgeries. (R. 305). Prior to 2002, she had received back surgery in 1990, and left and right shoulder surgeries. Dr. Flanagan also operated on her left and right elbows, one elbow operation taking place in 1994 or 1995 and the second in 1997. (R. 303-4). She had also experienced knee pain for several years before her 2004 and 2005 knee operations. (R. 317).

She testified that she had not worked since January 1997, when Dr. Flanagan told her not to return to work for six weeks to let her work-related "tennis" elbow heal. (R. 303). He subsequently performed her second elbow operation, and then Claimant took Family Medical Leave to take care of her mother, who passed away from cancer in August of 1997. (R. 304).

Claimant said that since her back surgery in 1990, she had been unable to sit or stand for more than ten to fifteen minutes without moving around. (R. 308). In addition to taking Darvocet pain medication twice daily, she had been seeing doctors for pain management medication for three years prior to the hearing, but had to stop receiving treatment because of her husband's illness. (R. 309). She experienced trouble sleeping, waking at 2:00 or 3:00 a.m. every evening and needing Ambien to sleep. (R. 309). With respect to her mental problems, Claimant testified that she had experienced panic attacks and had been receiving treatment for depression and anxiety at the Frank Kaye Clinic at Montclair since 2005. Although she had been taking medication for depression for over ten years, she claimed that her depression worsened with the death of her mother, six months after she stopped working in 1997. However, she first consulted a mental health professional after 2002. (R. 311-12). Her mental problems were under better control after she began receiving treatment at the Frank Kaye Clinic. (R. 315). She acknowledged going to exercise class to work on her knee and back problems. (R. 311).

     The Claimant's husband testified that during the time period of 1997 to 2002, the Claimant typically would lie in bed or on the couch 18 hours per day. (R. 319-20). The VE testified that the Claimant's past relevant job at the trophy shop was a combination of order clerk , receptionist, and material handler. The clerk/receptionist would be a semiskilled, sedentary work activity and the material handler part of the job would be a light-to-medium work activity. (R. 322). Her past employment at the bank would be considered skilled, light work. The Claimant's past work skills would transfer into sedentary job activities, particularly clerical jobs and simple bookkeeping jobs, and those jobs exist in sufficient numbers in the relevant economy. (R. 324). The VE testified that if she were limited to sedentary work, she

could not perform her past employment. (R. 324). When asked hypothetically to assume that she experienced pain at a scale of seven or eight (moderate to severe range), the VE testified that she would be unable to do her past relevant work and unable to perform any work in our nation's economy. (R. 326). Taking only her depression into account, if that depression remained at the mild to moderate level, claimant could work, but if it rose to the level of marked or extreme, claimant would be unable to concentrate and maintain the mental demands of work. (R. 328).

Subsequent to the hearing, the Claimant produced additional medical records, and the ALJ supplemented the record with these documents. Accordingly, by the time of the ALJ's April 2006 opinion, the record included the following medical documents regarding the Claimant: Brookwood Internists treatment notes covering the period from 1/10/03 to 6/28/04; Dr. James Flanagan treatment notes covering the period from 6/3/04 to 7/16/04; Frank Kay Clinic treatment notes covering the period 7/21/05 to 12/21/05; Dr. David Kimbrell treatment notes covering the period from 2/08/02 to 6/28/04; Baptist Medical Center-Montclair records covering the period 5/30/02 to 8/09-04; Baptist Sports Medicine records covering the period from 1/05/05 to 11/10/05; and Seale Harris Clinic records covering the period from 4/14/05 to 12/15/05.

ALJ's Opinion

In an opinion dated April 13, 2006, the ALJ found that the Claimant last worked on January 23, 1997, and had not worked since the alleged onset of her disability. (R. 14). He determined that her insured status expired as of December 31, 2002. (R. 20-21). He further determined that the Claimant "has the following 'severe' impairments: hypertension;

depression; disc bulges . . . at L3-4, L4-5 and L5-S1; degenerative changes at L5-S1 (probable degenerative disc disease); status post bilateral knee arthroscopies; and osteoarthritis of the right knee joint." (R. 18). Although the Claimant had alleged other surgeries and conditions, the ALJ found that the record does not substantiate any other physical conditions. (R. 18). The ALJ then found that these impairments do not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18).

The ALJ then evaluated the Claimant's residual functional capacity by considering the criteria assessments from Social Security Ruling 96-8p, the Claimant's own subjective complaints including pain, Social Security ruling 96-7p, and applicable Eleventh Circuit cases. (R. 18).

The ALJ noted that no treating source indicated that the Claimant was disabled or unable to work prior to December 31, 2002, the expiration of her last insured date. (R. 18). Given the lack of disagreement from a treating doctor, the ALJ accepted the opinions of W.B. Stonecypher, M.D., a state agency consultant who reviewed the available medical records. Dr. Stonecypher concluded that the evidence did not support a finding that the Claimant was disabled through her date last insured, and the ALJ found that the "evidence available at the time" reasonably supported Dr. Stonecypher's opinions. (R. 19).

The ALJ utilized the "pain standard" to evaluate the Claimant's subjective symptoms, which requires "evidence of (1) and underlying medical condition and (2) either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." (R. 19); *Landry v. Heckler*, 782 F. 2d 1551, 1553

9

(11th Cir. 1986). The ALJ concluded that the Claimant's allegations of severe problems prior to the expiration date were "disproportionate to the objective medical evidence." (R. 19). Noting the lack of objective signs, physical findings, or diagnostic studies that would confirm the existence of severe impairments, the ALJ also found that the Claimant's conditions would not reasonably be expected to produce disabling symptoms. (R. 19). He further found that "little evidence of corroboration" existed, pointing to the fact that her doctor only gave her six weeks off work after her 1997 elbow surgery, and that she "never attempted to return to work." (R. 19). In January 2003, the month after her insured status expired, Dr. Kimbrell characterized the Claimant's depression as under good control, and described her as feeling fairly well. (R. 130).

The ALJ found that the "only evidence of disability," the June 2004 surgery on her left knee and the February 2005 surgery on her right knee that led to a diagnosis of osteoarthritis of the right knee joint, occurred after the Claimant's insured period expired. (R. 19). The ALJ then found that from February 1, 1997, the Claimant's onset date, through December 31, 2002, Claimant's last insured date of Title II benefits, the Claimant retained the residual functional capacity to "perform the exertional demands of light work." (R. 19-20).

The ALJ relied on the vocational expert's testimony that the Claimant's past relevant work included "order clerk/receptionist (semi-skilled, sedentary); Material Handler (semi-skilled, light to medium); and Accounts Clerk (skilled, sedentary - performed at light)." (R. 20). The ALJ then found that the Claimant retained the residual functional capacity to work as order clerk/receptionist and accounts clerk through December 31, 2002. The ALJ also accepted the vocational expert's testimony the Claimant could perform other jobs such as data entry clerk and simple bookkeeping, and that these jobs existed in the relevant economy. (R. 20). As a result,

the ALJ found that the Claimant was not disabled under the Act during the period from February 1, 1997 through December 31, 2002.  (R. 20).

## VI. Discussion

The sole argument that Claimant raises on appeal is whether the ALJ properly discharged his duty to develop a full and fair record.  She claims that the ALJ had a duty to obtain medical records from the time period from February 1997 through the date of last insured, December of 2002.  The Commissioner acknowledges that the ALJ had a duty to develop a full and fair record, but asserts that he fulfilled that duty.

The court agrees with the Commissioner.  The ALJ's basic duty to develop a full and fair record required him to obtain medical evidence for the 12 month period prior to the application for benefits.  *See* 20 C.F.R. § 416.912(d) (stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application"); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (stating that the ALJ "was required to develop [claimant's] medical history for the 12 months prior to [his application date]").   The record in the instant case includes medical records beginning in February of 2002, more than sixteen months before the application date of June 23, 2004, and contains voluminous medical records from treating physicians and hospital during the period from June 2003 to June 2004.  The record also reflects that the Disability Determination Service unsuccessfully attempted to obtain additional medical records from UAB Hospital, that the Claimant was notified of this unsuccessful attempt, and that she was invited to furnish additional records.  Even after the hearing in this case, the Claimant continued to submit additional medical documents, and the ALJ supplemented the

record with these documents.

Indeed, the Claimant does not object to the completeness of the medical records for the 12-month period before her application, but rather, asserts that the ALJ's obligation to develop the record extends beyond that 12-month period and back to 1997. To support her argument, she quotes *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) and its language that the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."

However, *Smith v. Schweiker* involved an *unrepresented* claimant, and the claimant's unrepresented status – coupled with the record's failure to indicate whether the claimant was fully informed of his right to counsel – imposed upon the ALJ a heightened duty to develop the record. *Id.* Because the Claimant in the instant case was represented at all relevant times by counsel, *Schweiker's* language about the ALJ's obligations under that heightened duty does not apply. In addition, the *Schweiker* case does not stand for the specific proposition that an ALJ operating under the heightened standard must develop the record beyond the 12-month period before a claimant's application. Rather, *Sweiker* requires a reviewing court to determine whether a claimant who did not clearly waive his or her right to counsel suffered from unfairness or "clear prejudice" and, as part of that determination, to evaluate whether the record reveals evidentiary gaps. *Id.* at 829-30.

The Claimant bears the ultimate burden of proving that she is disabled, and she is responsible for producing evidence in support of her disability claim. *See* 20 C.F.R. § 416.912(a) (stating that a claimant "must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s)"); 20 C.F.R. § 416.912 (c) (stating "[y]our

responsibility. You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say you are disabled."). If she failed to provide medical evidence of her physical and/or mental impairments prior to 2002, then she should not – and this court will not – hold the ALJ responsible for that failure. Contrary to her allegations, the ALJ fulfilled his basic duty to develop the record; her claim that substantial evidence does not support his decision must fail on that ground.

### VII. Conclusion

For the reasons stated above, the court finds that substantial evidence supports the Commissioner's decision and, therefore, AFFIRMS it.

The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 31st day of March, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE